| | |
|---|---|
| TERESA MARIE SHABAN,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No. 1:19-cv-00111-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS<br><br>(ECF Nos. 16, 22, 24) |

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Teresa Marie Shaban ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from hiatal hernia, hypothyroidism, restless leg syndrome, migraine headaches, Vitamin B-12 deficiency, irritable bowel syndrome, asthma, tendonitis of the right wrist, degeneration of the triangular fibrocartilage of the right wrist, and carpal tunnel syndrome ("CTS"). For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

/ / /

/ / /

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 6, 8.)

1

**II.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 23, 2015, and a Title XVI application for supplemental security income on August 1, 2016. (AR 84.) Plaintiff's applications were initially denied on February 3, 2016, and denied upon reconsideration on March 23, 2016. (AR 99-102, 104-108.) Plaintiff requested and received a hearing before Administrative Law Judge Scot Septer ("the ALJ"). Plaintiff appeared for a hearing on November 16, 2017. (AR 32-74.) On April 23, 2018, the ALJ found that Plaintiff was not disabled. (AR 7-20.) The Appeals Council denied Plaintiff's request for review on November 28, 2018. (AR 1-3.)

**A.  Hearing Testimony**

Plaintiff appeared and testified at the November 16, 2017 hearing with counsel. (AR 38-63.) Plaintiff lives in a house with her husband and adult son. (AR 39.) They both work and her son is a full-time student. (AR 39.) Her husband is self-employed with a pest control business. (AR 39.) Plaintiff is 5' 3" tall and weighs about 130 pounds. (AR 39.) Over the previous twelve months her weight was as high as 150 pounds. (AR 40.) She has lost some weight because her stomach problems make it difficult for her to eat. (AR 30.) She also had the flu the previous week. (AR 40.) She had some diarrhea and cramping and within a few days could not get her head off the pillow. (AR 40-41.) She thought it was a cold, but it ended up being the flu. (AR 41.)

Plaintiff worked as a medical biller for an in-home health company from 2004 to 2006. (AR 42.) She worked in the office and it was pretty much light standard work. (AR 42.) She would put away supplies and did general office duties. (AR 42-43.) She would lift fifteen to twenty pounds. (AR 43.) Most of the day was spent sitting. (AR 43.) In 2007 and from 2008 to 2011, Plaintiff worked for Sierra Kings Health Care in the admitting department. (AR 43-44.) She would register patients that came in for lab services. (AR 44.) She was transferred to the emergency room as a unit clerk. (AR 44.) It was mostly desk work, but she also had to put supplies away and put paper in the printer. (AR 44.) She would lift fifteen to twenty pounds.

(AR 44.) She also worked as a cardiac monitor. (AR 46.) She continued to work at the hospital until 2015 when she was terminated due to her health. (AR 45.)

In 2013, Plaintiff got carpal tunnel in her right hand. (AR 45.) Something fell off the desk and she tried to catch it and hurt her hand. (AR 45.) Her duties and work performance did not change after she hurt her hand. (AR 46.) Plaintiff started getting sick to her stomach in December 2013 and ended up having emergency surgery to clear a blockage and a hernia repair. (AR 46-47.) In April of 2014, she had a surgery to remove part of her stomach due to complications from a previous gastric bypass surgery. (AR 47.) She has had problems ever since this surgery. (AR 47.) Plaintiff had gastric problems after her bypass surgery, but it was not constant or debilitating like currently. (AR 47.) Her prior problems would only last about twenty-four hours. (AR 48.) Now Plaintiff takes a day or two longer to recover and it hits her harder. (AR 48.) She will be in bed barely able to raise her head or get up to go to the bathroom. (AR 48.) She used to be able to function somewhat, but now cannot function when her stomach acts up. (AR 48.)

Her symptoms start out as bloating and pain. (AR 48.) Then she will spend time in the bathroom and will have accidents. (AR 49.) She has a little pillow and will just curl up in a ball with the pillow on her stomach. (AR 49.) She has three to four bad days a week where she has to curl up with the pillow. (AR 49.) They have tried to modify her diet but one day she will eat something with no problem and the next day the exact same thing will throw her into a full attack. (AR 49.) On a bad day, Plaintiff stays in bed and does not go far from the bathroom. (AR 49.) This has been occurring since 2013 and the surgeries in 2014. (AR 50.) Between 2013 and the surgery in 2014, Plaintiff would be doubled over in pain and her husband would have to pick her up and carry her. (AR 50.)

These symptoms started around Thanksgiving 2013 and they did not discover the problem until December. (AR 50.) During these two weeks she was going to the hospital three, four, or five times a week. (AR 50.) She would have to take off running to the bathroom and would be there 20 to 30 minutes. (AR 50.) She would be in the bathroom crying in pain and would have to compose herself to go out and deal with patients. (AR 50.) She was getting

written up at work during this time. (AR 50.) Plaintiff had surgery in 2013 and went back to work six weeks later. (AR 51.) She had another surgery in April 2014 and went back to work six weeks later. (AR 51.) She ended up going on state disability because of her stomach problems and having to work twelve-hour shifts sitting at the desk and not being able to move unless she had coverage. (AR 51.) She was terminated because of her symptoms and her carpal tunnel was getting worse. (AR 51-52.) She believes that she was terminated because of her stomach problems. (AR 52.) Whenever she went to a worker's compensation appointment, she would take her paperwork and her limitations would be commented on. (AR 52.) Plaintiff would be placed on modified duty for a period of time and would then go back on state disability. (AR 52.) They were trying to find other positions for her and she was applying for positions but nothing panned out. (AR 52.) After her six months of modified duty ran out, she did not try to work anywhere else. (AR 52-53.) Plaintiff did not think that she could work because she would need to be away from her desk for twenty minutes when her stomach acted up. (AR 53.)

During a typical day, Plaintiff will run out of steam faster than she used to, but she will do dishes and stuff like that. (AR 53.) A lot of times, she will not finish because she is too tired or her hand acts up. (AR 53.) She will get to the pots and pans and can not lift them so will leave them for her husband or son to finish. (AR 53.) She has difficulty opening jars and containers. (AR 53.) Plaintiff will go grocery shopping and do other things outside the home on a regular basis. (AR 53-54.) When she needs to get something heavy, like a case of water, she will have other customer or employees help her lift them off the shelf. (AR 54.) Her right hand is what keeps her from lifting things that are heavy. (AR 54.) Even bending over to lift something heavy can cause her to have stomach pain. (AR 54.)

Plaintiff has alternating bouts of diarrhea and constipation. (AR 54-55.) These happen fairly frequently and she can be constipated one minute and having explosive diarrhea within five minutes. (AR 55.) These episodes happen three to four days a week and can last the whole day. (AR 55, 57.) For the majority of these episodes, Plaintiff will stay in bed the whole day. (AR 57.)

Plaintiff had surgery for her right hand in April. (AR 57.) Prior to the surgery, her hand was totally weak. (AR 58.) She was not able to lift a gallon of milk or a cup of soda. (AR 58.) She had numbness and tingling in her wrist and pain in her hand. (AR 58.) She has trouble clasping her necklace. (AR 58.) There are times when Plaintiff is unable to help her husband with his paperwork on the laptop because it hurts. (AR 58.) She can use her hand to keyboard or wash dishes for about fifteen to twenty minutes before it starts hurting or feeling like she is going to drop something. (AR 58.) Her hand is getting better, stronger, since the surgery in April. (AR 59.) But she is starting to have symptoms in her left hand. (AR 59.) She is starting to feel weakness and her fingers will start cramping when she is typing a letter on her laptop. (AR 59.) This will happen after fifteen to twenty minutes of activity. (AR 59.)

Plaintiff gets daily migraine headaches during the fall and winter. (AR 59.) She is sensitive to barometric pressure and will get a headache when it is going to rain or is cloudy. (AR 59.) Plaintiff's migraines can trigger her abdominal pain because it starts with nausea. (AR 61.) Plaintiff can be in bed for two full days with a migraine headache. (AR 60.) She will lie down in her room with the lights off and a pillow over her head. (AR 60.) She will yell at her husband and son in the other room that they are too loud. (AR 60.) During the winter she will have headaches that keep her in bed twice a week. (AR 60.) During the summer and spring, she will have a migraine headache one or twice a month as long as there are no fires. (AR 60.) During the summer, she had asthma from the fires and the air really bothers her. (AR 59.)

Plaintiff's medications made her drowsy and she is on stomach medication because her stomach is sensitive. (AR 61.) Plaintiff takes pain medication for her right-hand pain. (AR 61.) One doctor told Plaintiff that he did not want to put her on medication for irritable bowel syndrome because it can block the signs of an intestinal blockage. (AR 61.)

On a daily basis, Plaintiff uses the restroom every hour to an hour and a half. (AR 55.) Plaintiff had an accident when she was in Walmart. (AR 55.) She made it to the bathroom and was in there for ten to fifteen trying to figure out what to do. (AR 55-56.) The episodes happen randomly. (AR 57.) Plaintiff will have about four accidents a month. (AR 56.) Plaintiff keeps a bag with a clean pair of underclothes and pants in her car in case she has an accident while out.

(AR 57.)

Gail L. Maron, a vocational expert, also testified at the hearing. (AR 63-72.)

**B.    ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through September 30, 2017.
- Plaintiff has not engaged in substantial gainful activity since June 1, 2015, the alleged onset date.
- Plaintiff has the following severe impairments: irritable bowel syndrome, asthma, tendonitis of the right wrist, degeneration of the triangular fibrocartilage of the right wrist, and CTS.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently and to stand, sit, and walk up to 6 hours in an 8-hour workday. She is able to frequently climb ramps and stairs and occasionally climb, ladders ,ropes, or scaffolds. Plaintiff is able to finger and feel frequently with her right upper extremity. She should avoid concentrated exposure to respiratory irritants such as gases, smoke, and fumes. Plaintiff requires a work environment in which there is access to restroom facilities within 100 feet of her work site.
- Plaintiff is capable of performing her past relevant work.
- Plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2015, through the date of this decision.

(AR 11-19.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

7

(internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ improperly rejected the opinion of treating physician, Dr. Rubio, regarding Plaintiff's abdominal symptoms and failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony. Plaintiff contends that the ALJ assumes that Plaintiff can hold herself until she reaches the restroom and ignored the fact that she described the accidents in a manner which requires a change of clothing. Further, Plaintiff contends that close proximity to the bathroom does not address her limited functioning during flareups and does not address her need for breaks and absenteeism. Plaintiff argues that the ALJ was required to give greater weight to her treating physician than to the opinion of the consultative or state physicians.

Defendant counters that the ALJ summarized Dr. Rubio's opinion in detail and explained that he gave the opinion little weight because the limitations were not supported by the record and there was no evidence to support that Plaintiff would need extra bathroom breaks where her testimony was that she had four accidents per month. Defendant argues that the limitation is contrary to Dr. Rubio's own treatment notes which indicate that she was gaining weight and was experiencing no bloody diarrhea, hematemesis, melena, or hematochezia and that Dr. Rubio

assessed Plaintiff's irritable bowel syndrome as stable, noting that she was eating and drinking okay. Defendant also argues that the ALJ properly found Plaintiff's symptom testimony to be inconsistent with the record. The record indicates that Plaintiff was being treated for a wrist injury but her qualified medical examination findings were generally normal and the ALJ reasonably questioned whether Plaintiff stopped working due to medical impairments or for some other reason. Further, Defendant contends that the ALJ relied on Plaintiff's wide range of activities of daily living and that her testimony was inconsistent with the medical evidence.

Plaintiff replies that Defendant merely restated the reasons provided by the ALJ that are insufficient to reject Dr. Rubio or her testimony. Further, Plaintiff argues that the ALJ cited reasons that were not relied on by the ALJ which cannot be used to affirm the ALJ's findings.

**A.  Physician Testimony**

Plaintiff argues that the ALJ erred by rejecting Dr. Rubio's opinion that Plaintiff needed extra breaks to use the bathroom finding that the opinion lacks record support and it was not entirely consistent with her testimony that she had four accidents per month. Plaintiff argues that the ALJ took Plaintiff's description of her symptoms out of context. Defendant counters that the ALJ properly considered the medical evidence which did not support the limitations opined.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citing 20 C.F.R. § 404.1527(d)(3)). The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the

record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

Here, Dr. Rubio's opinion is contradicted by the opinion of the consultative examiner, Dr. Wagner, therefore the ALJ was required to provide specific and legitimate reasons to reject Dr. Rubio's opinion.

The ALJ considered Plaintiff's treatment at the Adventist Health Center from March of 2015 through October 2016. (AR 15.)

> The claimant treated at Adventist Health for general illnesses between March of 2015 and October of 2016 [AR 303-465, 480-649, 703-738, 761, 905-921]. She was seen in March of 2015 for medication refills. The claimant complained of abdominal pain which caused vomiting. She said she had been taking too much medication which had caused sleepwalking  Her abdomen was soft non-tender and non-distended. The claimant was diagnosed with restless leg syndrome, fatigue, sleepwalking, and vomiting [AR 454-457]. She returned in June of 2015 requesting paperwork stating she could not work. The claimant said she experienced chronic abdominal pain episodes of diarrhea, leakage, and constipation which could not be accommodated at work. She was diagnosed with abdominal pain, constipation and bloating [AR 442-445]. At a July 2015 visit, the claimant reported she had episodes where she was doing well but then severe abdominal pain, colic, cramping, and excessive visits to the bathroom would resume [AR 429]. Records from that month reflect the claimant had a complex history of gastric bypass and adhesive obstructions [AR 404]. September 2015 records state the claimant had been changing her diet and it was helping. Her symptoms were less severe [AR 365]. The claimant reported no nausea, vomiting, diarrhea, constipation, heartburn, or abdominal pain at a visit for sinusitis in November 2016 [AR 340]. In May of 2016 she presented requesting medication refills. The claimant's past medical history included chronic fatigue, B-12 insufficiency, restless leg syndrome, and migraine headaches [AR 917-921]. She was given a B-12 injection in September 2016 [AR 911]. The claimant's migraine headaches were listed as an inactive problem in September and October 2016 [AR 906, 912].

(AR 15.) The ALJ further considered,

> In August 2017, the claimant presented complaining of abdominal pain which had lasted for three weeks and was accompanied by nausea, vomiting and diarrhea. An abdominal and pelvis CT demonstrated a small hiatal hernia but no evidence of acute abdominopelvic pathology. Laboratory work suggested a urinary tract infection. She was diagnosed with abdominal pain, acute urinary tract infection, and hiatal hernia [AR 703-709].

> The claimant was seen in February of 2016 at Alta Family Health Clinic to establish care. She reported experiencing headaches for six months which nothing relieved. The claimant said this was affecting her memory and thinking. She was diagnosed with a headache, allergic rhinitis, and sinus headache, and prescribed Imitrex. Laboratory work was ordered [AR 692-693]. At a December 2016 visit, the claimant said she believed she was experiencing side effects from all her medications. She stated she was having difficulty sleeping, was feeling confused and lethargic, and was restless at night. No neurological deficits were observed. She was diagnosed with chronic pain migraine and restless leg

syndrome [AR 683-685]. The claimant underwent an esophagogastroduodenoscopy in October of 2016. This revealed unspecified gastritis without bleeding and gastro-esophageal reflux disease with esophagitis [AR 957].

Board-certified gastroenterologist Ram Mittal, MD, examined the claimant in June of 2017. She presented with complaints of upper and lower abdominal pain noting symptoms since 2013. The claimant's abdomen was not distended, no masses were palpable, and there was no tenderness on palpation. She was diagnosed with irritable bowel syndrome, without diarrhea; generalized abdominal pain; and multiple surgeries. The doctor prescribed IBgard, and recommended a high fiber diet [AR 863-865].

Physician's Assistant Rajib Das, from Alta Family Health, completed a Physical Residual Function Capacity Medical Source Statement form in June 2017. He reported seeing the claimant five times since December of 2016 and diagnosed her with migraine headaches and nausea post gastric bypass. Physician's Assistant Das was unable to provide a prognosis and was unable to answer questions regarding her functional capabilities. He deferred to her primary care physician Dr. Rubio [AR 695-698].

Board-certified family medicine physician Agustin Rubio, MD, from Adventist Health, filled out a Physical Residual Function Capacity Medical Source Statement in July of 2017. He diagnosed the claimant with abdominal pain, vomiting, and diarrhea. Her prognosis was fair. It was his opinion the claimant could occasionally lift and carry 5 pounds, was able to sit for 1 hour in an 8-hour workday, and stand and walk for less than 1-hour in an 8-hour workday. She must be permitted to lie down or recline every 20 minutes for approximately 2 hours in an 8-hour workday. The claimant must be permitted to take unscheduled breaks throughout the workday. She was precluded from climbing ladders, ropes, scaffolds, ramps, and stairs. Her pain was severe enough to interfere with her attention and concentration constantly. The claimant had problems with bladder and bowel control. She would likely miss more than 5 days of work each month and could perform a job at 50% or less efficiency on a sustained basis [AR 699-702].

(AR 16-17.)

The ALJ gave little weight to Dr. Rubio's July 2017 opinion. (AR 17.) The ALJ found that the record did not support the exertional limitations and although Dr. Rubio stated that Plaintiff needed extra breaks to use the bathroom, this was not entirely consistent with her testimony that she had four accidents per month. (AR 17.) The ALJ found that requiring proximity to a bathroom would minimize such events. (AR 17.)

The ALJ also considered that Plaintiff had a consultative examination with Dr. Wagner in September of 2017 (AR 17, 739-749.) Plaintiff complained of experiencing symptoms of alternating constipation and diarrhea with bowel urgency and stated she had a hiatal hernia. (AR 17, 739.) Dr. Wagner observed that Plaintiff was able to get on and off the examination table

11

with ease, her abdomen was soft, minimally tender, and non-distended. (AR 17, 740-741.) Plaintiff was diagnosed with gastric bypass with some nausea, vomiting, and alternating constipation and diarrhea, and asthma mild to moderately well-controlled. (AR 17, 743.) It was Dr. Wagner's opinion that Plaintiff had the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; stand and walk up to 6 hours in an 8-hour workday; and sit without restriction. (AR 17, 743.) Plaintiff could climb ramps and stairs frequently; and ladders and scaffolds occasionally. (AR 17, 743.) Plaintiff should avoid prolonged exposure to dust, odors, fumes, and pulmonary irritants as well as temperature extremes. (AR 17, 743.)

The ALJ considered that Plaintiff had upper gastrointestinal x-rays in October 2017 that confirmed the small hiatal hernia and postsurgical changes consistent with gastric bypass, but there was no evidence of bowel obstruction, leak or opacification of the gastric remnant. (AR 18, 941.)

Here, the ALJ set out a detailed and thorough summary of the medical evidence and the conflicting opinions. The ALJ then stated his opinion as to weight that he was providing to the differing opinions and his reasons why. The ALJ can meet his burden of setting forth specific and legitimate reasons to reject a physician's testimony "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 779 F.2d 1403, 1408 (9th Cir. 1989)); Thomas, 278 F.3d at 957.

1. Dr. Rubio's Opinion

The ALJ rejected the limitations opined by Dr. Rubio because he found that the exertional limitations were not supported by the medical record. Plaintiff argues that Dr. Rubio's opinion is consistent with Plaintiff's testimony that she has flare ups with her stomach pain and stays in bed for days at a time with very little ability to function. (ECF No. 16 at 10-11.) However, Plaintiff points to no medical evidence in the record that would support the functional limitations opined by Dr. Rubio.

While Dr. Rubio opined that Plaintiff could occasionally lift 5 pounds and never lift 10

pounds; can sit 20 minutes before needing to lie down or recline due to fatigue, pain, and stress; and needs to lie down or recline about 2 hours in an 8 hour work day; can sit about 1 hour in an 8 hour workday; and can walk less than 1 hour in an 8 hour workday, (AR 700); on medical examination, Plaintiff generally had normal examination findings, including normal muscle strength and range of motion and normal gait, with occasional abdominal tenderness or wrist pain that improved. (AR 325, 343, 367-368, 386-387, 406, 431, 444-445, 456-457, 464, 502-503, 525, 543, 559, 580, 608, 672, 674, 677, 681, 684, 686, 693, 705, 723, 730, 740-743, 766-770, 783, 786, 788, 790, 793, 795, 797, 798, 800, 802-803, 805, 848-849, 865, 868, 893, 909, 914, 920, 927, 933, 944-945.) The ALJ noted that Plaintiff initially had restrictions in pulling and lifting with her right hand in her disability case. (AR 15.) The ALJ also found that her that her symptoms improved and she had good grip strength and no atrophy. (AR 15-16.) The ALJ could reasonably find that the examination findings do not support the severity of the functional limitations opined by Dr. Rubio. Inconsistency with the objective findings in the medical record is a specific and legitimate reason to reject a physician opinion. See Thomas, 278 F.3d at 957 (9th Cir. 2002); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600–02 (9th Cir. 1999). The ALJ provided a specific and legitimate reason to reject the opinion of Dr. Rubio.

2. Dr. Wagner's Opinion

Plaintiff argues that the ALJ erred by providing greater weight to the opinion of Dr. Wagner since Dr. Rubio was Plaintiff's treating physician. A treating physician's opinion is entitled to controlling weight on the issue of the nature and severity of the claimant's impairment where it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to 'controlling weight.'" Orn, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(d)(2). "In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." Orn, 495 F.3d at 632.

The factors to be considered include the " '[l]ength of the treatment relationship and the frequency of examination' by the treating physician, the '[n]ature and extent of the treatment relationship' between the patient and the treating physician, the '[s]upportability' of the physician's opinion with medical evidence, and the consistency of the physician's opinion with the record as a whole.' " Ghanim v. Colvin, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(2)-(6)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." Ghanim, 763 F.3d at 1161 (quoting Orn, 495 F.3d at 631).

Here, the ALJ considered the treatment relationship with Dr. Rubio, but found that his opinion was not consistent with the medical record as a whole. Further, the ALJ gave significant weight to Dr. Wagner's opinion, finding it to be based on a through and well documented examination and because Dr. Wagner was board-certified in internal medicine. (AR 17-18.) Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Here, Dr. Wagner conducted an independent examination of Plaintiff and his comprehensive findings are consistent with the generally normal findings in the record.

Plaintiff argues for a different result, but where there are contradictory opinions in the record, it is for the ALJ to determine credibility and resolve the conflict. Batson, 359 F.3d at 1195; Garrison, 759 F.3d at 1010. Where the evidence can reasonably support either affirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. Garrison, 759 F.3d at 1010. The ALJ did not err in giving greater weight to the opinion of Dr. Wagner.

**B.    Plaintiff's Credibility**

Plaintiff also contends that the ALJ erred in rejecting her testimony regarding the severity of her symptoms. Plaintiff argues that the ALJ erred in rejecting her level of impairment due to records concerning her asthma and her right arm. Defendant counters that the ALJ properly

14

found that Plaintiff's symptom complaints were not supported by the record, it appears that Plaintiff was let go from her last job for reasons not exclusively due to her impairments, and that Plaintiff's daily activities were inconsistent with the alleged severity of her impairments.

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn, 495 F.3d at 635 (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that her impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Then "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488–89 (9th Cir. 2015). "The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). Factors that may be considered in assessing a claimant's subjective pain and symptom testimony include the claimant's daily activities; the location, duration, intensity and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; functional restrictions; and other relevant factors. Lingenfelter, 504 F.3d at 1040; Thomas, 278 F.3d at 958. In assessing the claimant's credibility, the ALJ may also consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately

explained failure to seek treatment or to follow a prescribed course of treatment. . ..." Tommasetti, 533 F.3d at 1039 (quoting Smolen, 80 F.3d at 1284). The district court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with and unsupported by the evidence. (AR 19.) Defendant contends that the ALJ provided multiple reasons to reject Plaintiff's allegations of total disability. First, the ALJ found that Plaintiff reported that she was let go from her last job which suggests that her current unemployment is not exclusively due to her disability. However, Plaintiff testified that she was terminated because her symptoms and her carpal tunnel were getting worse. (AR 52.) They were trying to find other positions for her but nothing panned out and her modified duty ran out. (AR 52.) The Court finds that the fact that Plaintiff was terminated from her prior job is not a clear and convincing reason to reject her credibility.

Defendant further contends that the ALJ found that Plaintiff was capable of performing a wide range of daily activities. There are two grounds to use daily activities for an adverse credibility finding. Orn, 495 F.3d at 639. First, daily activities can form the basis of an adverse credibility determination if the claimant's activity contradicts his testimony. Id. Secondly, "daily activities may be grounds for an adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.' " Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ must make specific findings as to the daily activities and their transferability to conclude that the claimant's daily activities warrant an adverse credibility determination. Orn, 495 F.3d at 639

The ALJ did not make any specific findings as to Plaintiff's daily activities and their transferability so the Court finds that the ALJ must have found that Plaintiff's daily activities contradict her symptom testimony. Defendant argues that Plaintiff engages in a large range of daily activities that contradicts her claim of total disability. However, "[t]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility

as to her overall disability." Orn, 495 F.3d at 639 (citing Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001)). The ALJ did not discuss Plaintiff's symptom testimony or address how her daily activities are inconsistent with her testimony.

Defendant argues that Plaintiff's ability to engage in a largely normal range of activities supports the ALJ's inference that proximity to the bathroom should minimize her reported four accidents per month. But Plaintiff testified that three to four times per week she has episodes that go from constipation to explosive diarrhea. The ALJ did not address Plaintiff's testimony and the Court is constrained to review those reasons that the ALJ provided in finding the claimant's testimony not credible. Brown-Hunter, 806 F.3d at 492.

Similarly, the ALJ found that Plaintiff's testimony was inconsistent with the medical record, but the ALJ did not set forth any testimony by Plaintiff or explain why it was inconsistent with the medical record. Here, the Court finds that the ALJ did not set forth sufficiently specific findings to support the conclusion that Plaintiff was not credible such that this court could conclude the ALJ rejected Plaintiff's testimony on permissible grounds.[3]

**C.    Remand**

Plaintiff seeks to have this action remanded for payment of benefits and Defendant seeks remand for further proceedings. The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to

---

[3] Plaintiff challenges that ALJ's finding that proximity to the bathroom is sufficient to address her irritable bowel symptoms. However, the Court is remanding this action for further consideration of Plaintiff's symptom testimony and this issued is directly tied to Plaintiff's testimony. Since the issue of Plaintiff's credibility may affect the residual functional capacity findings, the Court declines to address the finding at this time.

17

remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. The credit as true doctrine allows "flexibility" which "is properly understood as requiring courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. Id. at 1021. Even when the circumstances are present to remand for benefits, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in our discretion." Treichler. 775 F.3d at 1102 (quoting Swenson v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

"A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." Strauss v. Comm'r of the Soc. Sec. Admin., 635 F.3d 1135, 1138 (9th Cir. 2011). Based upon the record, the Court cannot determine that the Commissioner would be required to award benefits in this instance. As discussed herein, there is substantial medical evidence to support the ALJ's finding that Plaintiff has the residual functional capacity to work.

Further, Plaintiff argues that her inability to work is due to her bouts of constipation and diarrhea, however the medical record does not support the severity of her alleged symptoms. While Plaintiff has complained of mild to moderate stomach pain, which she describes as cramping or colicky, and vomiting, she fairly consistently has reported no diarrhea or constipation which is inconsistent with her testimony that she experiences these symptoms four times a week. (AR 322, 340, 365, 384, 404, 429, 454, 500, 522, 540, 577, 605, 721, 905, 917,

Further, as noted in the record from her visit with Dr. Rubio on October 12, 2016, there are no subjective findings that things are actually getting worse she's actually gaining weight and not losing weight, did not have any bloody diarrhea or hematemesis nor melena or hematochezia. (AR 905.) On October 25, 2016, Plaintiff reported to Dr. Win that her stomach was a bit upset, but not too bad. (AR 944.) On November 14, 2016, Plaintiff reported she had no complaints other than a sinus infection. (AR 686.) On December 24, 2016, Plaintiff reported no gastrointestinal symptoms. (AR 683.) Although Plaintiff complained at several appointments of abdominal symptoms and that her symptoms made her unable to work, (AR 679, 681, 847), on June 2, 2017, Dr. Mittal found that Plaintiff had irritable bowel symptom without diarrhea. (AR 865.) On June 15, 2017, Physician's Assistance Das noted that the diagnosis of nausea, vomiting, and epigastric pain was based on Plaintiff's subjective complaints, (AR 695), and that Plaintiff claimed to have nausea and vomiting, (AR 698).

On August 8, 2017, Plaintiff was seen in the ER complaining of abdominal pain that had started three weeks prior. (AR 703.) Test results suggested a UI and there was no evidence of an acute abdominopelvic pathology. (AR 705-709.) On August 18, 2017, Plaintiff was seen in the ER for abdominal pain and reported that she had been told by the GI specialist the day before the she had an ulcer. (AR 867.) She was complaining of abdominal pain and vomiting. (AR 868.) On September 14, 2017, Plaintiff was seen complaining of abdominal pain and vomiting and reported no change in her bowel movements. (AR 923.) She reported that she was using medical marijuana for the pain and that she did not have abdominal pain that day, but some mild discomfort with no vomiting. (AR 923 The Court finds that this evidence requires this matter to be remanded for the ALJ to further develop the record on whether Plaintiff's limitations are severe as she testified at the hearing. Based on the evidence in the record showing inconsistencies between Plaintiff's testimony and the medical record, the Court cannot find that Plaintiff is entitled to benefits. Accordingly, the Court finds that this matter should be remanded to the Commissioner for further consideration of Plaintiff's symptom testimony.

The Social Security regulations require the Commissioner to set forth a discussion of the evidence, and the reason or reasons upon which the decision is based. 42 U.S.C. § 405(b)(1)).

The ALJ is advised that the agency must explain its reasoning in order for the Court to be able to perform a meaningful review. To meet the burden, the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." Treichler, 775 F.3d at 1102 (quoting Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir.2001)). Accordingly, "[g]eneral findings are insufficient" for an ALJ to meet the burden of setting forth clear and convincing reasons to reject a claimant's testimony. Treichler, 775 F.3d at 1102.

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred by failing to provide clear and convincing reasons to reject Plaintiff's symptom testimony. Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Teresa Marie Shaban and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: **January 27, 2020**

UNITED STATES MAGISTRATE JUDGE